PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq. (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:	510/832-5001
Facsimile:	510/832-4787
info@reincleftonlaw.com

IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALLACCESS LAW GROUP
irakli@allaccesslawgroup.com
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142

Attorneys for Plaintiffs
LETICIA CARRILLO and ARTURO CARRILLO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| LETICIA CARRILLO and ARTURO CARRILLO,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>CITY OF BELMONT,<br><br>　　　Defendant. | CASE NO.<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br><u>DEMAND FOR JURY TRIAL</u> |
|---|---|

　　　Plaintiffs LETICIA CARRILLO and ARTURO CARRILLO complains of Defendant CITY OF BELMONT, and alleges as follows:

　　　1.　**INTRODUCTION:** The City of Belmont intends to remove disabled accessible street parking that it had forced Plaintiffs to pay to create five years ago. Plaintiffs ask this Court to intervene and stop the removal.  Over Plaintiff's objections, and in direct violation of the ADA

1

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

and state laws, Defendant is deliberately deciding to remove accessible street parking that serve multiple disabled persons in the community and a nearby neighborhood restaurant. It is doing so because it believes the spaces are not "actually ADA compliant" and the City has come "under scrutiny of the Federal Highway Administration and Department of Justice Defendant." Defendant cites no correspondence, report or other notice from these agencies to Plaintiffs to justify the removal, only vague assertions of "scrutiny." Defendant cited no regulations to Plaintiffs that show why the existing street parking spaces are not compliant to Plaintiff. Nor could they. This because, as the 9th Circuit clearly states (contrary to Defendant's assertions) while Defendant must provide accessible street parking, *there are no regulations the define what accessible street parking must be*. *Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014).

2. In short, in the name of an imagined perfect accessible street parking space, Defendant wants to demolish the perfectly good ones serving Plaintiffs and the surrounding community. This Court should stop Defendant from doing so immediately, as detailed in the concurrently filed Motion for Preliminary Injunction.

3. Around five years ago, Plaintiff LETICIA CARRILLO and her now deceased husband requested that Defendant CITY OF BELMONT provide a designated accessible parking space in front of their home for their own and the general public's use. Defendant agreed to designated two parking spaces as accessible under the ADA near Plaintiff Leticia's home on two conditions. First, before designating the spaces as accessible with signage and a stripe of paint, Defendant required Plaintiffs to install a concrete apron in front of their home to provide an accessible route from the designated accessible street parking spaces to the public sidewalk *at Plaintiff's own expense*. Second, Defendant required Plaintiffs to move the fence on their property back from the sidewalk to allow for sufficient space for wheelchairs to travel down the sidewalk, again, *at Plaintiff's own expense*.

4. The cost of the remediation to Plaintiff LETICIA CARRILLO and her late husband was around $17,000. They decided it would be worth it to have the designated accessible parking spaces near their home. They hired a contractor, performed the requested

work, and Defendant painted the curb and put up an accessible parking sign for the two designated accessible parking spaces. The blue curbs and signs indicated that they were designated accessible parking spaces but the City took no other action to make the spaces accessible.

5. Incredibly, in September of 2022, five years later, Defendant informed Plaintiffs that the designated accessible would be removed in the by September 1, 2023.[1] This, despite that fact that Plaintiffs need and use those designated accessible parking space on a regular basis. Both Plaintiffs have been issued disabled parking from the State of California which allow them to park their cars in designated accessible parking spaces. Each of them has used the designated accessible parking spaces near their home on a regular basis over the last five years.

6. Defendant has a duty to maintain accessible features such as designated accessible parking spaces. 28 C.F.R. § 35.133. Their intention and decision to remove the spaces is a clear and intentional violation of the ADA and state law. This Court should immediately halt the demolition of the disabled parking spaces serving Plaintiff LETICIA CARRILLO's home.

7. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC § 1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq*. Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including but not limited to violations of California Civil Code §§ 54, 54.1, and 54.3; and Title 24 California Code of Regulations.

8. **VENUE:** Venue is proper in this court pursuant to 28 USC § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiffs' causes of action arose in this district.

9. **INTRADISTRICT:** This case should be assigned to the San Francisco intradistrict as the real property which is the subject of this action is located in this intradistrict and Plaintiffs' causes of action arose in this intradistrict.

10. **PARTIES:** Plaintiff LETICIA CARRILLO is an 83-year-old disabled individual.

---

[1] As of the filing of this complaint, the spaces have not been removed.

She has difficulty with balance and walking long distances due to an old back injury and heart disease. She is unable to walk more than a block without significant difficulty, and she often uses a cane for stability while walking. Plaintiff Leticia has been issued a disabled placard from the California Department of Motor Vehicles which allows her to park her vehicle or any vehicle she is transported in a designated accessible parking space. Plaintiff Leticia owns the home located at 1321 6th Avenue, Belmont, California. She is a qualified physically disabled person within the meaning of the ADA.

11. Plaintiff ARTURO CARRILLO is Plaintiff Leticia's son. He has difficulty with walking long distances due to degenerative disc disease. He uses a cane for stability and assisted mobility while walking. Plaintiff Arturo has been issued a disabled placard from the California Department of Motor Vehicles which allows him to park his vehicle or any vehicle he is transported in a designated accessible parking space. He is a qualified physically disabled person with the meaning of the ADA. Plaintiff Arturo visits his mother two to three times per week at her home located at 1321 6th Avenue, Belmont, California.

12. Defendant CITY OF BELMONT is a public entity subject to Title II of the ADA, and to all other federal and state law legal requirements referred to in this complaint. Defendant is responsible for providing and maintain parking and accessible parking in the City of Belmont.

13. **FACTUAL STATEMENT**: Plaintiff Leticia and her husband purchased their home in the City of Belmont around 35 years ago. The home they purchased had parking that allowed entry to their home through an alley behind it which requires them to climb flight of stairs to get to the entrance level of the home. While Plaintiff Leticia and her husband remained healthy, climbing the stairs was not an issue for them.

14. As Plaintiff Leticia and her husband aged, it became more difficult for them to access their home through alley in the back. They began parking their car on the street in front of their home so that they could enter through the front which was more accessible to them given their disabilities. When they first began parking their car on the street, parking in front of their home was plentiful. The only business property near their home was a small deli which did not have a large customer base. It did not have a place for diners to eat inside the business and was

closed in the evening.

15. In or around 2016, the deli closed. A full-service restaurant moved into the space. The popular restaurant had long hours and lots of customers. The street parking in Plaintiffs' neighborhood started to fill up with the restaurant's customers. By this time Plaintiff Leticia was having more difficulty with walking and stability, and her husband was on dialysis. They both had to drive to frequent medical appointments. When they returned from the appointments it was almost impossible for them to find parking close to their home.

16. In or around 2017, Plaintiffs contacted Defendant, explained the parking issue, and requested that the City of Belmont install a designated accessible parking space in front of Plaintiff Leticia's home. They understood that the parking space would be available to any member of the public with a disabled parking placard, but Plaintiffs thought it would help alleviate their parking difficulties. It also would help them access their home because the spaces were closer to it than where they often had to park elsewhere.

17. Defendant came to Plaintiff Leticia's home to investigate the situation. Defendant informed Plaintiffs that it would be willing to install a designated accessible parking spaces denoted by a blue curb and appropriate signage if Plaintiffs would pay to have a concrete curb-cut/apron installed in front of their home in order to provide an accessible path of travel from the designated accessible street parking space to the sidewalk. Defendant also informed Plaintiffs that they would also need to move their fence back to ensure that there was compliant turning space and a compliant path of travel on the public sidewalk.

18. Plaintiffs contacted a contractor who informed them that the cost to install the curb/cut apron and move the fence would be around $17,000. Plaintiffs decided that although the cost was high, it was worth it to have a designated accessible parking space so near their home. Plaintiffs hired the contractor, and had the work done. They paid the contractor the $17,000. Once the work was completed, Defendant installed two designated accessible parking spaces near Plaintiffs' home, one on either side of the curb cut/apron. The google maps photo below is a true and correct version of how the parking spaces looked after they were installed.



19. Both Plaintiff Leticia and Plaintiff Arturo have used the accessible parking spaces in the neighborhood for the last 5 years. Plaintiff Arturo often parks in one of the designated accessible parking spaces near his mother's home when he visits her two to three times per week. The spaces have also benefited other disabled individuals in the neighborhood and disabled persons who frequent the nearby restaurant.

20. On September 13, 2022, Defendant's representative, Elizabeth Wada, P.E., emailed Plaintiff Leticia and informed her that the City of Belmont would be removing the designated accessible parking spaces currently in front of her home. The email stated:

> I am emailing to inform you that handicap signage in front of your home 1321 6th Ave will be removed in the coming weeks. The stall is not actually ADA compliant and thus may not be designated as such. Luckily, you will still have access to your home from the rear alley.

21. Plaintiff Arturo reached out to Defendant to request more information about why it was decreasing access in Plaintiff Leticia's neighborhood by removing these accessible parking space. Additionally, Plaintiff Arturo explained the difficult that Plaintiff Leticia has accessing her home from the alley. He also explained that he and other disabled persons use the designated accessible parking spaces in front of Plaintiff Leticia's home. Plaintiff Arturo also explained that the Plaintiff Leticia had expended significant personal resources so that Defendant would agree to install the accessible parking spaces.

22. On September 19, 2022, Defendant responded with a letter to Plaintiff Leticia which stated:

> Please be advised that the blue curb and handicap signage in the public right of

way in front of 1337 6th Avenue will be removed on or before October 31, 2022, and in front of 1321 6th Avenue by September 1, 2023 to comply with the ADA requirements that spaces be provided only for equal access to public facilities. The City of Belmont has recently come under scrutiny of the Federal Highway Administration and Department of Justice, resulting the City to do a full audit of the accessibility installed for public use.

23. Plaintiffs again contacted Defendant in protest. Defendant responded that Plaintiff Leticia could use the curb cut/apron as a driveway and park her car in her front yard area. Plaintiff Arturo explained that the fence/gate which Defendant forced Plaintiff Leticia install on her property, at her own expense, when the designated accessible parking spaces were installed is too heavy for her to open and close. Defendant recommended that Plaintiffs install a motorized fence on the property, another expense for Plaintiffs.

24. Defendant has stated that they intend to continue with its plan of removing the designated accessible parking spaces in front of Plaintiff Leticia's home.

**FIRST CAUSE OF ACTION:**
**DISCRIMINATION IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITES ACT OF 1990**

25. Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 24, above, and incorporates them herein by reference as if separately repled hereafter.

26. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

27. At all times herein mentioned, Plaintiffs were entitled to the protections of the

"Public Services" provisions of Title II of the ADA, Subpart A, which prohibits discrimination by any public entity as defined by 42 USC section 12131. Pursuant to 42 USC section 12132 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the "services, programs or activities" of a public entity, or be subjected to discrimination by such entity. Plaintiffs were at all times relevant herein qualified individuals with a disability for all purposes under the ADA.

28. In violation of Title II of the ADA, Defendant has failed to ensure that individuals with physical disabilities such as Plaintiffs are not excluded from "services, programs and activities" at the subject facilities and property, including parking in their neighborhood streets. By reason of Defendant's failure to maintain the accessible features at the subject facilities so as to keep them "accessible to and useable by" mobility impaired persons, despite actual notice of the need to maintain the accessible street parking spaces, as more specifically set forth hereinabove, and by their policy decisions as above-described, Defendant has discriminated against Plaintiffs in violation of Title II of the ADA and the regulations adopted to implement the ADA. With relation to damages claimed under Title II of the ADA, each such instance of discrimination is alleged to have been intentional and/or have been created and maintained in conscious disregard of the effect upon Plaintiffs and other similarly disabled persons, and with deliberate indifference.

29. As a result of such intentional discrimination, in violation of section 12132 of the ADA, Plaintiffs are entitled to the remedies, procedures and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 USC 794a), as provided by section 12133 of the ADA.

30. On information and belief, to the date of filing of this Complaint, Defendant has failed to maintain the accessible features that make the facilities and property as described herein accessible to and usable by physically disabled persons, as required by law.

31. Plaintiffs request that an injunction be ordered requiring that Defendant maintain all such facilities and properties herein described accessible to and usable by mobility impaired disabled persons, and to train it's employees and agents with regard to having appropriate sensitivity to the needs of physically disabled persons, and in taking appropriate steps to

accommodate their disabilities.

32. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

33. Defendant has a policy of removing accessible features, including removing accessible street parking, in the City of Belmont.

34. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

35. **DAMAGES:** Damages are available under the Title II of the ADA upon a showing of intentional discrimination. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Alexander v. Sandoval*, 531 U.S. 1049, 1517 (2001). In order to prove intentional discrimination, Plaintiffs must show that Defendant City and County acted with "deliberate indifference" in violating his rights under Title II of the ADA. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

> Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988) . . . When the plaintiff has alerted the public entity to his need for accommodation (**or where the need for accommodation is obvious, or required by statute or regulation**), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.

*Id.* 260 F.3d at 1139.

36. Defendant had a statutory duty to ensure that its programs are readily accessible to persons with disabilities who require the use of accessible on-street parking such as Plaintiffs. 29 C.F.R. § 35.130(b)(7); *Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir.2002); *Fortyune v. City of Lomita*, 766 F. 3d 1098, 1103 (9th Cir. 2014); *Sarfaty v. City of Los Angeles*, No. 2:17-cv-03594-SVW-KS, 2020 WL 1079904, at *7 (C.D. Cal. 2020); *Keith v. City of San Diego*, No. 21-cv-01782-JAH-JLB, 2022 WL 4241271, at *4 (S.D. Cal. 2022); *Hammond v. City of Red Bluff*, No. 2:14-cv-01136-TLN, 2014 WL 6612059, at *3 (E.D. Cal. 2014); *Bassilios v. City of Torrance, CA*, 166 F. Supp. 3d 1061 1084-1085 (C.D. Cal. 2015) (on-street, parallel, parking in residential area is a program, service, or activity subject to Title II of the ADA. "Installing a blue curb parking space in front of Plaintiff's apartment building is a reasonable modification that would provide her access to the City's parking program, and it would neither impose an undue burden on the City nor require the City to alter its existing program."). Defendant has refused to maintain accessible street parking which Plaintiffs use despite Plaintiffs' repeated requests that the City of Belmont not to remove the designated accessible spaces on the street near their home. The need for accommodation in this matter is both "clearly obvious" and "required by statute or regulation," and therefore meets and likely exceeds the standard for an award of damages under the deliberate indifference standard. *Duvall*, 260 F.3d at 1139. Further, Defendant was on *actual* notice of the need for accommodation because Plaintiffs explicitly requested that the City of Belmont not remove the accessible parking spaces because they needed the accommodation to allow them to freely use the street parking near their home. Defendant received this information by Plaintiffs explicitly informing it's employees of the issue, they then deliberately informed Plaintiffs that they would be removing the designated accessible street parking spaces near their home by October 31, 2023.

37. Defendant's establishment of its discriminatory policy and practice to deny accessible street parking, and its implementation of such a discriminatory policy against Plaintiffs, indicate intentional discrimination toward Plaintiffs and deliberate indifference for their rights and safety. Plaintiffs suffered damages as above described as a result of Defendant's

violations. Damages are ongoing based on the continuation of this policy and will continue until Defendant informs Plaintiffs that they will not remove the accessible street parking spaces in their neighborhood.

WHEREFORE, Plaintiffs pray the Court grant relief as requested below.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING CIVIL CODE §§ 54 and 54.1 GOVERNMENT CODE §§ 4450, *et seq*., AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE §§ 54(c) and 54.1(d)**

38. Plaintiffs replead and incorporate by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 37 of this Complaint and incorporate them herein.

39. At all times relevant to this Complaint, California Civil Code section 54(a) has provided that:

> (a) Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, . . . public facilities and other public places.

Emphasis added.

40. At all times relevant to this Complaint, California Civil Code section 54.1 has provided that physically disabled persons are not to be discriminated against because of physical handicap or disability in the use of a public accommodation:

> . . . [P]hysically disabled persons shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities and privileges of all common carriers, airplanes, motor vehicles. . . or any other public conveyances or modes of transportation, telephone facilities, hotels, lodging places, places of public accommodation, and amusement or resort, and other places to which the general public is invited, subject only to the conditions or limitations established by law, or state or other federal regulations, and applicable alike to all other persons.

The discrimination by Defendant against Plaintiffs on the basis of their disability constitutes a violation of the general anti-discrimination provisions of Civil Code sections 54 and 54.1.

41. Plaintiffs are informed and believes and therefore alleges that the specified public facilities are structures or related facilities within the meaning of California Government Code

sections 4450 and 4451. The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of Government Code sections 4450, *et seq*. As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiffs in violation of Government Code sections 4450, *et seq*., and of the Title 24-2 regulations adopted to implement sections 4450*ff*. Each violation of sections 4450, *et seq*. constitutes a violation of Civil Code sections 54 and 54.1.

42. Any violation of the Americans With Disabilities Act of 1990 (as pled in the First Cause of Action) also constitutes a violation of sections 54(c) and 54.1(d) of the California Civil Code, thus independently justifying an award of injunctive relief pursuant to California law. Plaintiffs allege that they have been denied such full and equal access as required by California law which incorporates Title II of the ADA, including but not limited to 42 U.S.C. sections 12131 and 12132.

43. Plaintiffs have no adequate remedy at law and, unless the relief requested herein is granted, Plaintiffs and other disabled persons will continue to suffer irreparable harm as a result of Defendant's failure to fulfill its obligations to provide meaningful access to the subject public facilities.

44. Wherefore Plaintiffs ask this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiffs in the respects complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided for a violation of California Government Code sections 4450, *et seq*., for causing a denial of rights by disabled persons, by California Civil Code sections 54, *et seq*. Plaintiffs allege that Defendant failed to maintain the legally required access at certain designated "accessible" street parking spaces in the City of Belmont, and further requests that the Court award attorney fees, litigation expenses and costs pursuant to Government Code sections 4450, *et seq*., Civil Code sections 54.3 and 55, California Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

45.     **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct, Plaintiffs have been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiffs' rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiffs therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 54.3 and 55. Additionally, Plaintiffs' lawsuit is intended to require that Defendant maintain their accessible facilities and policies to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiffs pray the Court grant relief as requested below.

## **PRAYER FOR RELIEF**

Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiffs LETICIA CARRILLO and ARTURO CARRILLO pray for judgment and the following specific relief against Defendant:

1.      An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To modify their policies and practices to accommodate disable persons who must use accessible street parking int eh City of Belmont in conformity with federal and

        state law, and to advise Plaintiffs that the accessible parking spaces in front of their home will be maintained for the future use of disabled persons;

    c. That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with physical disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiffs and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d. An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiffs of all appropriate damages, including but not limited to statutory damages, general damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiffs pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4. An award of prejudgment interest pursuant to Civil Code § 3291;

5. Interest on monetary awards as permitted by law; and

6. Grant such other and further relief as this Court may deem just and proper.

//
//
//

Date: December 5, 2022                    REIN & CLEFTON
                                          ALL ACCESS LAW GROUP


                                          ____/s/ Aaron Clefton_____
                                          By AARON CLEFTON, Esq.
                                          Attorney for Plaintiffs
                                          LETICIA CARRILLO and ARTURO
                                          CARRILLO

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all claims for which a jury is permitted.

Date: December 5, 2022                    REIN & CLEFTON
                                          ALL ACCESS LAW GROUP


                                          ____/s/ Aaron Clefton_____
                                          By AARON CLEFTON, Esq.
                                          Attorney for Plaintiffs
                                          LETICIA CARRILLO and ARTURO
                                          CARRILLO